SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PAUL S. COWIE, Cal. Bar No. 250131
BROOKE S. PURCELL, Cal. Bar No. 260058
AMANDA E. BECKWITH, Cal. Bar No. 312967
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:   415.434.9100
Facsimile:   415.434.3947
Email:        pcowie@sheppardmullin.com
        bpurcell@sheppardmullin.com
        abeckwith@sheppardmullin.com

Attorneys for
PETSMART, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KRISTINA CLARK on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>PETSMART, INC., a Delaware corporation and DOES 1 through 50, inclusive,<br><br>      Defendants. | Case No.<br><br>[Removed from Contra Costa County Superior Court, Case No. CIVMSC19-00954-EW]<br><br>**PETSMART, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO THE CLASS ACTION FAIRNESS ACT**<br><br>Complaint Filed:   May 15, 2019<br>FAC Filed:   January 3, 2020<br>SAC Filed:   March 11, 2020 |

-1-

PETSMART, INC.'S NOTICE OF REMOVAL OF
CIVIL ACTION TO FEDERAL COURT

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HER ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that Defendant PetSmart, Inc. ("Defendant" or "PetSmart") hereby removes the action *Kristina Clark v. PetSmart, Inc.*, pending in the Superior Court of California, County of Contra Costa, Case No. CIVMSC19-00954-EW, the to the United States District Court for the Northern District of California.  Removal is based on the Class Action Fairness Act ("CAFA").  This Court has original subject matter jurisdiction over Plaintiff Kristina Clark's ("Plaintiff") lawsuit under 28 U.S.C. §§ 1332(d)(2), 1441, 1453, and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000.  Accordingly, removal is proper based on the following grounds:

## I.  STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

1.      On February 18, 2005, the Class Action Fairness Act ("CAFA") was enacted.  In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

2.      This Court has jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: 1) the proposed class contains at least 100 members; 2) the defendant is not a state, state official or other governmental entity; 3) the total amount in controversy for all class members exceeds $5,000,000; and 4) there is diversity of citizenship between at least one class member and one defendant.  Each of these conditions were satisfied at the time this action was initiated and now at the time of removal.

-2-

3.     CAFA's minimal diversity requirement is satisfied when: 1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens, 2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or 3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

4.     As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

**II.     CLAIMS AND PROCEDURAL HISTORY**

5.     On or about May 15, 2019, individually and on behalf of all other purportedly similarly situated non-exempt, hourly employees, Plaintiff Kristina Clark filed a putative class action complaint against PetSmart in the Superior Court of the State of California, County of Contra Costa, entitled *Kristina Clark v. PetSmart Inc.*, Case No. CIVMSC19-00954-EW. (the "Complaint").   On July 10, 2019, Plaintiff served a copy of the Complaint, Summons, Civil Case Cover Sheet, Notice of Assignment to Department 39, and Notice of Hearing on Order to Show Cause on PetSmart.   Attached hereto as **Exhibits A-E** is a true and correct copy of the Complaint, Summons, Civil Case Cover Sheet, Notice of Assignment to Department 39, and Notice of Hearing on Order to Show Cause.

6.     On or about July 15, 2019, counsel for Plaintiff filed and served a declaration requesting to continue the Initial Case Management Conference.   The Court issued an order continuing the July 23, 2019 Initial Case Management Conference ("CMC") to August 28, 2019.   The Order was not served on PetSmart. Attached hereto as **Exhibit F** is Plaintiff's declaration.

7.     On or about August 9, 2019, PetSmart filed its Answer to the Complaint. Attached hereto as **Exhibit G** is a true and correct copy of PetSmart's Answer to Plaintiff's Complaint.

8.      On or about August 13, 2019, PetSmart filed a CMC Statement. Attached hereto as **Exhibit H** is a true and correct copy of PetSmart's Case Management Conference Statement.

9.      On or about August 23, 2019, the parties filed a Stipulation and Order to Request Continuance of the CMC to September 25, 2019.  Attached hereto as **Exhibit I** is a true and correct copy of the Stipulation.  PetSmart is informed and believes that the court entered the Order, but the Order was not served on PetSmart.

10.     The Court issued an Order to Show Case ("OSC") regarding Plaintiff's failure to appear at the September 25, 2019 CMC, and continued the CMC and set a hearing on the Order to Show Cause on October 29, 2020.  On or about October 22, 2019, the parties filed a Stipulation requesting a continuance of the CMC and OSC hearing to January 30, 2020.  Attached hereto as **Exhibit J** is a true and correct copy of the Stipulation.

11.     Pursuant to the parties' Stipulation filed on or about October 22, 2019, the Court granted Plaintiff leave to file a First Amended Complaint to add a claim under the Private Attorneys General Act of 2004, Labor Code §§ 2698 *et seq.* ("PAGA") on October 23, 2019.  Attached hereto as **Exhibit K-L** are true and correct copies of the Stipulation and Order entered on November 13, 2019, and Plaintiff's Notice of Entry of Order served on November 13, 2019.

12.     On or about January 3, 2020, Plaintiff filed her First Amended Complaint ("FAC").  Attached hereto as **Exhibit M** is a true and correct copy of the FAC.

13.     On or about January 9, 2020, PetSmart filed its Answer to the FAC. Attached hereto as **Exhibit N** is a true and correct copy of PetSmart's Answer to Plaintiff's FAC.

14.     Pursuant to the parties' Stipulation filed on or about January 15, 2020, the Court continued the January 31, 2020 CMC until April 1, 2020.  Attached hereto as **Exhibits O-P** are true and correct copies of the Stipulation and Order filed on January 21, 2020.

-4-

15.     On March 9, 2020, the parties filed a Stipulation for Leave for Plaintiff to File Second Amended Complaint.  The Court signed the Order granting leave to amend on March 13, 2020, and deemed the Second Amended Complaint ("SAC") filed as of March 13, 2020.  Attached hereto as **Exhibits Q-R** are true and correct copies of the Stipulation and proposed Order, and the SAC, respectively.

16.     On March 27, 2020, the parties entered into and filed a Stipulation and Proposed Order to continue the April 1, 2020 CMC and OSC until June 2, 2020. Attached hereto as **Exhibit S** is a true and correct copy of the Stipulation and Proposed Order.

17.     Plaintiff's SAC asserts claims for: (1) failure to pay lawful wages including overtime wages and minimum wage under Labor Code §§ 510, 1194,  and 1199; (2) failure to provide lawful meal periods or compensation in lieu thereof under Labor Code §§ 226.7, 512 and applicable Wage Orders; (3) failure to provide lawful rest periods or compensation in lieu thereof under Labor Code §§ 226.7 and applicable Wage Orders; (4) failure to timely pay wages under Labor Code §§ 201-203; (5) knowing and intentional failure to comply with itemized employee wage statement provisions under Labor Code § 226(b)); (6) failure to reimburse employee expenses under Labor Code § 2802; (7) violations of the Unfair Competition Law under Business & Professions Code §§ 17200-17208; and (8) violations of the Private Attorney General Act under Labor Code § 2698 *et seq.* ("PAGA").

18.     Plaintiffs' Second Amended Complaint ("SAC") is styled as a putative class action under Code of Civil Procedure § 382.  Plaintiff's SAC defines the putative class as: "all persons who are or were employed by PETSMART in the state of California as nonexempt employees within four (4) years prior to the date [her] lawsuit is filed until resolution of this lawsuit." ("Putative Class").  (SAC, ¶ 23.) Plaintiff also alleges the following six subclasses:

> "All persons who are or were employed by PETSMART in the state of California as nonexempt employees, within the

statutory liability period, and were not accurately and fully paid all lawful wages owed to them including minimum wages and/or proper overtime compensation for all their hours worked" ["Unpaid Wage Subclass"];

"All persons who are or were employed by PETSMART in the state of California as nonexempt employees, within the statutory liability period who have not been provided an uninterrupted 30 minute meal period when they worked over five hours in a work shift by the end of the fifth hour and were not provided compensation in lieu thereof" ["Meal Period Subclass"];

"All persons who are or were employed by PETSMART in the state of California as nonexempt employees within the statutory liability period, who have not been authorized or permitted to take a duty free ten minute rest period for every four (4) hours or major fraction thereof worked per day and were not provided compensation in lieu thereof" ["Rest Period Subclass"];

"All persons who are or were employed by PETSMART in the state of California as nonexempt employees within the statutory liability period who were not timely paid all wages due and owed to them upon the termination of their employment with Defendants" ["Waiting Time Subclass"];

"All persons who are or were employed by PETSMART in the state of California as nonexempt employees who, within the statutory liability period, were not provided with accurate and complete itemized wage statements" ["Wage Statement Subclass";

"All persons who are or were employed by PETSMART in the state of California as nonexempt employees within the statutory liability period who were required to use their personal mobile phones in the performance of their job duties and not reimbursed by Defendants" ["Expense Reimbursement Subclass"].

(*See id.* ¶¶ 24(a)-(f).)  Plaintiff also seeks to recover civil penalties on behalf of all "current and former employees of Defendant against whom one or more of the

violations of the Labor Code was committed during the applicable period" under PAGA. (*Id.* ¶ 73.)

19.    A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of California for the County of Contra Costa. **Exhibits A-S** contain all "process, pleadings, and orders" served on PetSmart in accordance with 28 U.S.C. § 1446(a). No other proceedings have been held in this action.

## III.    JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT IS SATISFIED

20.    Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014) (A notice of removal "need not contain evidentiary submissions."). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exists." *Id.* at 554. Evidence is required "***only*** when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* (emphasis added); *Arias v. Residence Inn by Marriott*, 936 F.3d 920 (9th Cir. 2019) (court may not remand where notice of removal plausibly alleges the basis for removal, without giving the defendant an opportunity to prove the jurisdictional requirements are satisfied).

21.    The United States Supreme Court in *Dart Cherokee* held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Id.* Following *Dart Cherokee*, the Ninth Circuit has directed the district courts to "interpret CAFA's provisions under section 1332 ***broadly in favor of removal*** ..." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended

-7-

CAFA to be interpreted expansively").  In *Bridewell-Sledge v. Blue Cross*, 798 F.3d 923 (9th Cir. 2015), the Ninth Circuit held that under *Dart Cherokee*, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'"  *See also Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 U.S. Dist. LEXIS 129574, at *4 (C.D. Cal. 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

**A.**    **The Case Is a Proposed Class Action with a Putative Class of At Least 100 Members, and PetSmart Is Not a State, State Official, or Government Entity**

22.    This action has been styled as a California class action under California Code of Civil Procedure § 382.  (SAC, ¶ 1 ("This is a Class Action, pursuant to Code of Civil Procedure section 382, brought against Defendant PETSMART INC.").)  Code of Civil Procedure § 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

23.    28 U.S.C. § 1332(d)(5) excludes from CAFA jurisdiction cases in which "the primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief; or…the number of members of all proposed plaintiff classes in the aggregate is less than 100."

24.    PetSmart is neither a state, a state official, nor a government entity.

25.    Plaintiff's SAC alleges that PetSmart "currently employ[s] and during the relevant period have employed over one hundred (100) employees in the State of California in non-exempt hourly positions."  (SAC, ¶ 21.)  On the basis of its own investigation, PetSmart determined there are more than 100 current and former non-exempt employees in California during the four-year period prior to the filing of the Complaint.  Therefore, Plaintiff's proposed class consists of at least 100 members now at the time of removal and at the institution of this civil action.

**B.     Minimum Diversity of Citizenship Exists Here**

1.     CAFA requires minimum diversity of citizenship, pursuant to 28 U.S.C. section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

26.     Plaintiff's SAC alleges that she is a resident of California.  (SAC, ¶ 10.) Plaintiff's SAC further alleges that the putative class consists of "[a]ll persons who are or were employed by PETSMART <u>in the state of California</u> as nonexempt employees within four (4) years prior to the date [her] lawsuit is filed until resolution of this lawsuit." (*Id.* ¶ 23 (emphasis added).)

27.     Although no *evidence* of domicile is required at the notice of removal stage (*Dart Cherokee*, 135 S.Ct. at 554; *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223 (9th Cir. 2019) (allegation of plaintiff's citizenship is sufficient for removal)), "[p]roof of residence in a state is usually thought *prima facie* evidence of domicile." *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see also Anderson v. Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary…"); *Barbosa v. Transp. Drivers, Inc.*, 2015 WL 9272828, at *2 (C.D. Cal. 2015) ("a person's residence is *prima facie* evidence of his or her place of domicile for purposes of diversity jurisdiction") (quoting *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012)). Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013).

28.     Further, where there are no allegations of citizenship of certain parties in the complaint, a removing party may introduce "objective facts" in support of removal that would tend to show the domicile or citizenship of a party in a particular state. *See Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986) ("the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes"); *see also Jones v. Law Firm of Hill and Ponton*, 141 F.Supp.2d 1349, 1355 (M.D. Fla. 2001).

29.     Here, the SAC affirmatively discloses that Plaintiff was a resident of California at the time this case was filed.  Accordingly, Plaintiff is now at the time of this removal, and was at the institution of this civil action, a citizen of California for purposes of determining diversity.  *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

30.     Because Plaintiff resides in California, worked in California for PetSmart, and because Plaintiff's proposed class is defined to include persons "who are or were" employed in the State of California, PetSmart may rely on the foregoing presumptions to establish that Plaintiff, and at least some of the putative class members, are now at the time of removal, and were at the institution of this civil action, domiciled in California and therefore citizens of California.

31.     <u>PetSmart's Citizenship</u>:  PetSmart is now at the time of this removal, and was at the institution of this civil action, a corporation incorporated under the laws of Delaware.  As a corporation, PetSmart is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

-10-

32.    In *Hertz Corp. v. Friend*, 559 U.S. 77, 92-3 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination." *Id.* At 93.

33.    Under the foregoing standard PetSmart is a citizen of Arizona and Delaware for purposes of removal. PetSmart is incorporated in the state of Delaware, and maintains its corporate headquarters in Phoenix, Arizona. PetSmart's corporate and executive officers are employed in Arizona. PetSmart's administrative functions (including that of legal, payroll, and human resources), are conducted in Phoenix, Arizona. Phoenix, Arizona is also where the actual center of direction, control and coordination for PetSmart takes place. This is well established by the following fact: the corporate headquarters is the actual center of direction, control and coordination of all major human resources, payroll, legal and administrative functions; and the respective officers for these departments work in Phoenix, Arizona and are responsible for developing policies and protocols for PetSmart. All of the facts alleged in this paragraph are true as of the time of this removal and were also true at the initiation of this civil action. Accordingly, PetSmart's principal place of business is, and was at the institution of this civil action, in the State of Arizona. *See* 28 U.S.C. § 1332(c)(1).

34.    In accordance with the foregoing, PetSmart is now at the time of removal, and was at the time of the institution of this civil action, a citizen of Delaware and Arizona (and not a citizen of California), and Plaintiff and some of the putative class members are now at the time of removal, and were at the institution of this civil

-11-

1   action, citizens of California (and not citizens of Arizona or Delaware).  Thus, the

2   minimum diversity requirement under CAFA is satisfied.

3       35.   Doe Defendants:   Pursuant to 28 U.S.C. section 1441(a), the residence

4   of fictitious and unknown defendants should be disregarded for purposes of

5   establishing removal jurisdiction under 28 U.S.C. section 1332.  *Fristoe v. Reynolds*

6   *Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not

7   required to join in a removal petition).  *Soliman v. Philip Morris, Inc.*, 311 F.3d 966,

8   971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal).

9   Thus, the existence of Doe defendants 1 through 50 does not deprive this Court of

10  jurisdiction.

11      36.   In accordance with the foregoing, Plaintiff is a citizen of the State of

12  California, while PetSmart is a citizen of the States of Arizona and Delaware (the

13  principal place of business and state of incorporation, respectively, for PetSmart).

14  Thus, the minimum diversity requirement under CAFA is satisfied.

15  **C.    The Amount in Controversy Exceeds the $5,000,000 Requirement under**

16      **CAFA**

17      37.   Without making an admission of liability or damages with respect to any

18  aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on

19  behalf of herself and the putative class, the amount in controversy exceeds the

20  jurisdictional minimum of this Court as detailed below.

21      38.   "[A] defendant's notice of removal need include only a plausible

22  allegation that the amount in controversy exceeds the jurisdiction threshold."  *Dart*

23  *Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).  Moreover,

24  a defendant need not set forth evidence establishing the amount in its notice of

25  removal.  *Id.*  A defendant is not obliged to "research, state, and prove the plaintiff's

26  claims for damages."  *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994).  A

27  defendant can establish the amount in controversy by "providing only a short and

28  plain statement of the grounds for removal."  *Ehrman v. Cox Commc'ns, Inc.*, 2019

-12-

WL 3720013 (9th Cir. Aug. 8, 2019); *see also Dart Cherokee*, 135 S. Ct. at 547 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations"). Here, PetSmart alleges there is more than $5,000,000 in controversy.

39.   CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the *aggregate* amount in controversy for all class members exceeds five million dollars ($5,000,000.00). *See* 28 U.S.C. § 1332(d). By demonstrating that the actual amount in controversy exceeds the threshold, PetSmart does not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will recover anything.

40.   "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 80s6, 807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe") (original emphasis); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe") (aff'd by 631 F.3d 1010 (9th Cir. 2011)).

41.   In the Ninth Circuit, the amount in controversy is determined "at the time of removal." *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). In *Chavez v. JPMorgan Chase*, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat

-13-

the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." *Chavez*, 888 F.3d at 417 (original emphasis). *Chavez* held that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id.* at 414-15. These principles were affirmed again by the Ninth Circuit in *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018).

42.     Plaintiff's pleadings in this action fail to affirmatively disclose the amount in controversy or information from which PetSmart could readily ascertain the amount in controversy without independent investigation and analysis. Plaintiff's pleadings were each "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the meaning of *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013).

43.     PetSmart provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction. PetSmart makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims. Nor does PetSmart waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of her claims.

44.     PetSmart independently determined based on its own business records that Plaintiff's proposed Putative Class is comprised of approximately 22,241 current and former employees in California during the four-year period prior to the filing of the Complaint.

-14-

45.    PetSmart independently determined based on its own business records that Putative Class members worked a total of approximately 1,374,000 workweeks during the four-year period prior to the filing of the Complaint. Additionally, the California minimum wage in 2015 and 2016 was $10.00 per hour. Thus, Putative Class members earned at minimum $10.00 per hour during the applicable limitations period(s).

46.    Based on its own business records, PetSmart determined that Plaintiff's proposed Waiting Time Subclass is comprised of approximately 12,480 former Putative Class members during the three-year period prior to the filing of the Complaint.

Amount in Controversy for Rest Period Premiums

47.    Rest breaks under California law are required for non-exempt employees who work three and a half (3 1/2) or more hours in a day. Non-exempt employees are entitled to a rest period of ten (10) minutes for each four (4) hours, or major fraction thereof, that they work in a day. *See* California Wage Orders, § 12. California law requires employers to pay employees one additional hour of pay at the employee's regular rate of compensation for each workday that a rest period that is required to be provided is not provided. Cal. Labor Code § 226.7.

48.    Plaintiff alleges that PetSmart's "policy and practice requires that Plaintiff and Class Members remain on the premises during their scheduled rest breaks" and Class Members "were required to take [walkie-talkies] on their rest breaks." (SAC, ¶ 16.) Plaintiff claims that as a consequence, PetSmart did not authorize and permit Plaintiff and the Putative Class to take compliant rest periods and were not compensated one (1) hour of pay at the regular rate of compensation. (*Id.*)

49.    In *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007), the California Supreme Court held that the premiums due under Cal. Labor Code § 226.7

are compensatory wages for statute of limitations purposes and therefore have a three year statute of limitations period.  *See* Cal. Code Civ. Proc. § 338(a).

50.    However Plaintiff asserts that PetSmart's alleged Labor Code violations "constitute unlawful and/or unfair business practices" under Business and Professions Code §§ 17200, *et seq.* and thus seeks "restitution of all wages which have been unlawfully withheld" from Plaintiff and the Putative Class.   (SAC, ¶¶ 64, 67.) California District Courts are split as to whether the four year statute of limitations under California Business & Professions Code § 17200 will extend the time to seek unpaid meal and rest period premiums.  Cal. Bus. & Prof. Code § 17208; *compare Horton v. NeoStrata Co.*, 2017 WL 2721977 (S.D. Cal. 2017) and *Dittmar v. Costco Wholesale Corp.*, 2016 WL 3387464 (S.D. Cal. 2017) with *Parson v. Golden State FC, LLC*, 2016 WL 1734010 (N.D. Cal. 2016) and *Guerrero v. Halliburton Energy Servs. Inc.*, 231 F. Supp. 3d 797 (E.D. Cal. 2017).

51.    Because the jurisdictional amount in controversy is determined based on what Plaintiff alleges, not what she will ultimately recover, a four year limitations period is appropriate for jurisdictional purposes.  Therefore, the relevant time period to calculate Plaintiffs' amount in controversy for alleged rest period violations is four years prior to the date Plaintiff filed her Complaint to the present, *i.e.* from May 15, 2015 to the present.  (*See* SAC, ¶ 23 (defining the class period as reaching back four years).)

52.    PetSmart independently determined based on its own business records and on the allegations within Plaintiff's Complaint that the amount in controversy for rest period premium damages is at least $13,740,000 based on a conservative one missed rest break per week (1,374,000 workweeks x 1 missed rest period per week x minimum $10.00 hourly rate).

53.    Therefore, the amount in controversy for Plaintiff's rest period premium damages claim alone also exceeds the jurisdictional minimum of $5,000,000.

1      Meal Periods:

2      54.    California law requires employers to pay employees one additional hour

3  of pay at the employee's regular rate of compensation for each workday a meal period

4  that is required to be provided is not provided.  Labor Code § 226.7.  California law

5  requires provision of meal breaks to non-exempt employees who work more than five

6  hours in a workday. Cal. Labor Code § 512.  Plaintiff alleges that due to PetSmart's

7  "work load requirements and time constraints resulting from the demands of work

8  shift," she and the Putative Class were required to work more than five hours without

9  being provided with a meal period, and PetSmart failed pay the meal period premium

10 "for each workday that a meal period was not provided."  (SAC, ¶ 17.)

11     55.    Similar to Plaintiff's rest period allegations, Plaintiff alleges that

12 PetSmart violated California Business & Professions Code §§ 17200 *et seq.* for the

13 alleged failure to provide meal periods.  (SAC, ¶¶ 64, 67.)  As noted above, the

14 limitations period for a claim under California Business & Professions Code § 17200

15 is four years, and the appropriate period to use for determining the amount in

16 controversy.  Cal. Bus. & Prof. Code § 17208.

17     56.    Therefore, PetSmart independently determined based on its own

18 business records and on the allegations within Plaintiff's Complaint that the amount

19 in controversy for meal period premium damages is at least $13,740,000 based on a

20 conservative one missed meal period per week (1,374,000 workweeks x 1 missed

21 meal period per week x minimum $10.00 hourly rate).

22     57.    Therefore, the amount in controversy for Plaintiff's meal period

23 premium damages claim alone also exceeds the jurisdictional minimum of

24 $5,000,000.

25     58.    PetSmart would be justified in using a 100% violation rate in computing

26 the amount in controversy based on the nature of Plaintiff's allegations that:  (1)

27 Plaintiff and Putative Class members were not provided rest periods because PetSmart

28 required they stay on the premises; (2) Plaintiff and the Putative Class were not

-17-

provided meal periods due to work load and time constraints from the demands of work; and (3) PetSmart failed to pay Plaintiff and Putative Class members meal and rest period premiums "<u>each workday</u> that a [meal or rest] period was not provided." (SAC, ¶¶ 16-17.) (Emphasis added.)  *See Coleman*, 730 F. Supp. 2d at 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation"); *see also Sanchez v. Russell Sigler, Inc.*, 2015 U.S. Dist. LEXIS 55667, *16 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods"); *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *4 (C.D. Cal. 2018) (100% violation rate proper when allegations are "routine and systematic violations" of California's meal and rest period laws).  Nonetheless, although PetSmart could have used a 100% violation rate, instead it used only a 20% violation rate as the amount in controversy is met by simply assuming one violation per week.

<u>Waiting Time Penalties</u>

59.     Under Cal. Labor Code § 203, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202...any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

60.     Plaintiff alleges that "more than 30 days have passed since Plaintiff and affected Class Members have left Defendants' [sic] employ, and on information and belief, have not received payment pursuant to Labor Code § 203." (SAC, ¶ 51)   She further alleges that, "[a]s a consequence of [PetSmart's] willful conduct in not paying all earned wages, certain Class Members are entitled to 30 days' wages as a penalty under Labor Code section 203 for failure to pay legal wages." (*Id.*)

-18-

61.    The statute of limitations for Plaintiff's waiting time penalties claim is three years.  Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1390 (2010).  Based on the three year statute of limitations and the time frame alleged by Plaintiff, there are approximately 12,480 alleged members of the Waiting Time Subclass, whose employment terminated in the relevant time frame alleged by Plaintiff, between May 15, 2016 and the present.

62.    Therefore, PetSmart independently determined based on its own business records and on the allegations contained within Plaintiff's SAC that Plaintiff alleged an amount in controversy for waiting time penalties damages (exclusive of interest) that would alone exceed the $5,000,000 jurisdictional amount required under CAFA even if each Waiting Time Subclass member worked on average only two hours per day and earned minimum wage.  If each Waiting Time Subclass member averaged a work schedule of two hours per day, then waiting time penalties would total approximately $7,488,000 (12,480 alleged Waiting Time Subclass members x $20.00 per day [minimum $10.00 hourly rate x 2 hours] x 30 days).

63.    Therefore, the amount in controversy for Plaintiff's waiting time penalties claims alone exceeds the $5,000,000 jurisdictional amount required under CAFA.

Amount in Controversy for Plaintiff's Other Claims

64.    In addition to the claims identified above, Plaintiff alleges that she and the Putative Class were not paid minimum and overtime wages in accordance with California law, that they were not provided with timely and accurate wage statements in violation of Cal. Labor Code § 226, and that they were not reimbursed for all business expenses in violation of Labor Code § 2802.  (SAC, ¶¶ 33-38, 53-61.)

65.    Labor Code § 1194 states that an employee receiving less than the legal minimum wage or the legal overtime wage is entitled the recover the amount owed in a civil action.

66.     Labor Code § 226(e) provides for penalties in the amount $50 for each initial alleged wage statement violation to an employee, and $100 for each subsequent violation.

67.     Under Labor Code § 2802, employees are entitled to recover from the employer all necessary expenditures or losses incurred in the discharge of their duties.

68.     For these reasons, Plaintiff's claims for unpaid minimum and overtime wages, inaccurate wage statements, and unreimbursed business expenses, further increases the amount in controversy beyond the jurisdictional minimum of $5,000,000.

<u>Amount in Controversy for Attorneys' Fees</u>

69.     Plaintiff also alleges an entitlement to attorneys' fees.  (SAC, Prayer for Relief, ¶ 6.)  Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy.").  In *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.

70.     Although not a per se rule (*see Fritsch*, 899 F.3d at 796, n.6), courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy.  *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. 2018); *Ramirez v. Benihana Nat'l Corp.*, 2019 WL 131843, at *2 (N.D. Cal. 2019); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as

-20-

a benchmark award for attorney fees").  Thus, an additional minimum amount of $8,742,000 must be included in the amount in controversy ([$13,740,000 alleged rest period premiums + $13,740,000 alleged meal period premiums + $7,488,000 alleged waiting time penalties] x 25% = $8,742,000).

71.   And the same amount for alleged attorneys' fees is in controversy using the "lodestar" method of fee computation.  *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"); *see also Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *5 (S.D. Cal. 2013) ("California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent").

72.   For all of the forgoing reasons, PetSmart alleges that the amount placed in controversy by Plaintiff is significantly greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action.  The amount in controversy requirement for CAFA is therefore satisfied.

**D.    No CAFA Exceptions Apply**

73.   CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(4).  However, none of these exceptions are applicable here.  The party resisting removal has the burden of proving the existence of a CAFA exception.  *King v. Great Am. Chicken Corp.*, 903 F.3d 875, 878 (9th Cir. 2018).

74.   The first is a discretionary exception based on the number of putative class members found in the state where the action was filed.  *See* 28 U.S.C. § 1332(d)(3).  However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed."  Here, the action

was originally filed in California and, as noted above, PetSmart is not a citizen of California.  Thus, this exception does not apply.

75.     Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed.  However, these exceptions, too, only apply where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed."  *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and 1332(d)(4)(B).  Given that this action was originally filed in California, and PetSmart is not a California citizen, these exceptions also do not apply.

## IV.     **SUPPLEMENTAL JURISDICTION**

76.     Under 28 U.S.C. § 1367(a):

> "Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

77.     To the extent the Court concludes it lacks original jurisdiction over any of Plaintiff's claims, it should exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a), since each of Plaintiff's causes of action emanate from and form part of the same "case or controversy" as Plaintiff's other claims, such that they should all be tried in one action.  *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990).  Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the Plaintiffs' SAC.  *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock v.*

-22-

1  *Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, at *3 (S.D. Cal.

2  2007).

3       78.    Here, the Court has supplemental jurisdiction over Plaintiff's non-class

4  PAGA claim, because those claims emanate from and form part of the same "case or

5  controversy" as Plaintiff's class claims, such that they should all be tried in one

6  action.  *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir.

7  1990).  Plaintiffs' PAGA claims seek to recover civil penalties arising from the

8  same exact alleged wage and hour violations alleged in Plaintiffs' class claims.[1]  *See*

9  *Thompson v. Target Corp.*, 2016 WL 4119937, at *12 (C.D. Cal. 2016) ("Plaintiff's

10  PAGA and class claims concern the same misconduct by Defendant and the PAGA

11  claims are therefore properly within the Court's supplemental jurisdiction.").

12  Considerations of convenience, judicial economy, and fairness to the litigants

13  strongly favor this Court exercising jurisdiction over all claims pleaded in the SAC.

14  *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see*

15  *also Pinnock*, 2007 WL 1989635, at *3.

16       79.    None of the exceptions to supplemental jurisdiction found in 28 U.S.C.

17  § 1332(c) are applicable to this case.  Plaintiff's PAGA claim does not raise novel or

18  complex issues of State law different from the class claims, they do not substantially

19  predominate over the named Plaintiff's individual claims, the class claims have not

20  been dismissed, and there are no exceptional circumstances or compelling reasons

21  for declining jurisdiction.  The exceptions enumerated in 28 U.S.C. § 1332(c) are

22  the exclusive grounds under which the Court may decline to exercise supplemental

23  jurisdiction.  *Exec. Software N. Am.*, 24 F.3d at 1556.

24       80.    For these reasons the Court has supplemental jurisdiction over any

25  claims pleaded by Plaintiff falling outside of the Court's original jurisdiction,

26

27  [1] In addition to the wage and hour claims, Plaintiff also seeks penalties under PAGA for
28  failure to provide suitable seating in violation of IWC Wage Order 7-2001 § 14, and thus
constitutes part of the same "case or controversy" as Plaintiff's other PAGA claims.

-23-

including but not limited to Plaintiff's claim for civil penalties under PAGA, Labor Code §§ 2699, *et seq.* (*See* SAC, ¶¶ 69-73.).

## V.      TIMELINESS OF REMOVAL

81.     Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed–during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

82.     When a complaint is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the first 28 U.S.C. § 1446(b) thirty-day window does not begin to run. *Id.* at 692-695. "[T]he ground for removal must be revealed affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to begin." This reasoning was more recently confirmed in *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."

83.     A complaint is "indeterminate" when "it is unclear from the complaint whether the case is removable, *i.e.,* the [jurisdiction facts are] unstated or ambiguous." *Harris*, 425 F.3d at 693. Plaintiff's Complaint does not affirmatively allege or otherwise state that the amount in controversy exceeds $5,000,000. Further, it is not discernable from the face of the Complaint that more than $5,000,000 was placed in controversy. There is nothing in the Complaint setting forth the amount of damages recoverable for the alleged legal violations, nor the number of times the violations allegedly occurred. (*See generally* SAC.) Rather,

1    the Complaint simply demands damages and other remedies in an unstated amount.

2    (*Id.* at Prayer For Relief.)

3        84.    Under *Harris*, the Court must not "inquire into the subjective

4    knowledge of the defendant, an inquiry that could degenerate into a mini-trial

5    regarding who knew what and when.  Rather…the court [may] rely on the face of

6    the initial pleading and on the documents exchanged in the case by the parties to

7    determine when the defendant had notice of the grounds for removal, requiring that

8    those grounds be apparent within the four corners of the initial pleading or

9    subsequent paper."  *Harris*, 425 F.3d at 695 (*quoting Lovern v. GMC*, 121 F.3d 160,

10    162 (4th Cir. 1997).  Thus, the Complaint is "indeterminate" and its service does not

11    trigger the first 28 U.S.C. § 1446(b) thirty-day window to remove.  *See Roth*, 720

12    F.3d at 1125 (holding that complaint was "indeterminate" when "[i]t did not reveal

13    on its face that…there was sufficient amount in controversy to support jurisdiction

14    under CAFA."); *see also Calkins v. Google, Inc*., 2013 U.S. Dist. LEXIS 97829,

15    2013 WL 3556042 at *2-3 (N.D. Cal. 2013) (holding that service of complaint did

16    not trigger thirty-day window when amount in controversy was not affirmatively

17    stated, even where defendant could have reduced the amount in controversy from

18    documents in its possession).

19        85.    As of the date of this filing, the parties have not exchanged any

20    subsequent papers determinative of the jurisdictional amount in controversy in this

21    matter.  Where neither the initial pleading nor "other paper" discloses the grounds

22    for removal, a defendant may remove at any time after it independently learns of the

23    facts supporting removal jurisdiction.  *Roth*, 720 F.3d at 1125.  PetSmart, based on

24    its investigation and internal records, has since been able to determine that the

25    amount in controversy based on the allegations in Plaintiff's Complaint, well

26    exceeds the $5,000,000.00 threshold.  Thus, like in *Roth*, the facts alleged in this

27    notice support that removal is both proper and timely.

28

## VI.   JOINDER

86.   PetSmart is not aware of any other defendant that exists and who has been named in the SAC or who has been served with a summons and the SAC.  The only defendants named in Plaintiff's SAC are PetSmart and fictitiously named Doe defendants, whose presence is disregarded for purposes of removal.

## VII.   VENUE

87.   Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), and 1391.

## VIII.   NOTICE TO PLAINTIFF AND STATE COURT

88.   This Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of the State of California in and for the County of Contra Costa.

89.   In compliance with 28 U.S.C. section 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on PetSmart or filed by PetSmart are attached hereto as **Exhibits A through S**.

WHEREFORE, having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of Contra Costa to this Court.

Dated:  May 5, 2020          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____
                    */s/ Amanda E. Beckwith*
                    PAUL S. COWIE
                    BROOKE S. PURCELL
                    AMANDA E. BECKWITH

                    Attorneys for Defendant
                    PETSMART, INC.